# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATA NIGIEMATULINA,<br><br>                    Petitioner,<br><br>  v.<br><br>KRISTI NOEM, *et al.*,<br><br>                    Respondents. | Case No. 26-cv-00359-BAS-BJW<br><br>**ORDER DENYING RENEWED MOTION TO ENFORCE JUDGMENT (ECF No. 12)** |

Presently before the Court is Petitioner Renata Nigiematulina's Renewed Motion to Enforce Judgment. (ECF No. 12.) For the following reasons, the Court **DENIES** the Motion.

**I.  Background**

Petitioner filed a renewed Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her immigration detention. (Pet., ECF No. 1.) Petitioner is a Russian national who is subject to a final order of removal, but she was granted withholding of removal to Russia. (*Id.*, Ex. C.)

After a hearing, the Court granted the Petition on January 30, 2026. (ECF No. 6.) The Court found Petitioner's detention violated *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there was no reasonable likelihood of removal in the reasonably foreseeable future.

1  (*Id.*)  The Court ordered Respondents to release Petitioner and found it appropriate to grant
2  the following permanent injunctive relief:

> Respondents are **PROHIBITED** from removing Renata Nigiematulina, A244-037-142, without providing Petitioner and her counsel with notice of the country Respondents plan to remove her to and an opportunity to be heard.
>
> Respondents are **PROHIBITED** from re-detaining Renata Nigiematulina, A244-037-142, for removal unless Respondents have obtained a travel document to effectuate removal.

(*Id.*)

On February 26, 2026, Petitioner filed an Emergency Motion to Enforce the Judgment.  (ECF No. 9.)  Petitioner's counsel stated that on the morning of February 26, Petitioner "was arrested at an ICE check-in in Los Angeles and informed she was being deported to Moldova."  (*Id.*)  It was not clear whether Respondents had a travel document for removal to Moldova.  (*See id.*)  The same day, Petitioner filed a Motion for Temporary Restraining Order ("TRO").  (ECF No. 10.)

On February 27, 2026, the Court granted in part and denied in part the Emergency Motion to Enforce the Judgment and the TRO request.  (ECF No. 11.)  The Court reasoned that its injunctive relief did not prohibit Respondents from re-detaining Petitioner in any circumstances.  (*Id.*)  Rather, they are prohibited from re-detaining her "for removal unless Respondents have obtained a travel document to effectuate removal."  (ECF No. 6.)  Because Petitioner's filings did not show that Respondents violated this prohibition, the Court denied Petitioner's two requests in part.  (ECF No. 11.)

That said, the Court explained that the original intent of the Court's injunctive relief was to provide a meaningful opportunity for Petitioner and her counsel to raise an objection to the country identified for removal.  *See Orozco-Lopez v. Garland*, 11 F.4th 764, 770–71 (9th Cir. 2021) (explaining the process for non-citizens "whose prior removal order has been reinstated" to raise a claim of "'reasonable fear' of persecution or torture in the designated country of removal").  Consequently, the Court clarified the first component of the judgment's injunctive relief as follows:

>Respondents are **PROHIBITED** from removing Renata Nigiematulina, A244-037-142, without providing Petitioner and her counsel with notice of the country Respondents plan to remove her to and an opportunity to be heard. Respondents are ordered to give Petitioner and her counsel said notice at least **ten days** before removal to give them a meaningful opportunity to raise opposition to the third country.

(ECF No. 11.) Therefore, the Court granted in part Petitioner's requests to the extent that they were seeking to enforce the Court's requirement that Petitioner and her counsel be given reasonable notice to challenge removal to Moldova. (*Id.*)

The same day, Petitioner filed a Renewed Motion to Enforce the Judgment. (ECF No. 12.) The Renewed Motion argues that Respondents lacked a travel document to re-detain Petitioner because Respondents are relying on her Russian Passport for removal to Moldova. (*Id.*) The Court ordered Respondents to address the Renewed Motion by no later than March 2, 2026. (ECF No. 13.) Respondents have done so. (ECF No. 15.)

**II.   Analysis**

The Court has "continuing jurisdiction to enforce [its] injunctions." *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994). Petitioner "has the burden of showing by clear and convincing evidence" that Respondents "violated a specific and definite order of the court." *See Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). The burden then shifts to Respondents "to demonstrate why they were unable to comply." *See id.*

The question here is whether Respondents are in violation of the Court's prohibition on "re-detaining [Petitioner] for removal unless Respondents have obtained a travel document to effectuate removal." (ECF No. 6.) In their response to the Renewed Motion, Respondents submit the declaration of Jorge Suarez, a Deportation Officer with the Department of Homeland Security. (ECF No. 15-1.) Suarez declares that Moldova has accepted Petitioner for removal, and Petitioner has "been approved for Third Country Removal to Moldova with her Russian Passport." (*Id.*) Further, Respondents are "in possession of [Petitioner's] Russian Passport. (*Id.*) Hence, Respondents argue they are

not in violation of the Court's order because Moldova has agreed to accept Petitioner, and Respondents possessed the necessary document to effectuate removal before re-detaining her. (ECF No. 15.)[1]

Given Respondents' showing, the Court is unpersuaded that there is "clear and convincing evidence" that Respondents "violated a specific and definite order of the court." *See Stone*, 968 F.2d at 856 n.9. Therefore, the Court denies the Renewed Motion to Enforce Judgment.

### III. Conclusion

In light of the foregoing, Petitioner's Renewed Motion to Enforce Judgment is **DENIED**. (ECF No. 12.)

**IT IS SO ORDERED.**

DATED: March 4, 2026

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

---

[1] Separately, Respondents note that "[a]fter being detained, Petitioner claimed a fear of removal to Moldova, and [the Enforcement and Removal Operations office in] Los Angeles has begun the process of referring Petitioner to United States Citizenship and Immigration Services to screen such claim of fear." (*Id.* (citing Suarez Decl.).)